[No. 23331–9–I. Division One. April 23, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. CHAE SON PELKEY, *Respondent.*

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy; Bruce Jones, Everett City Attorney,* and *Michael E. Weight, Assistant,* for appellant.

*Charles J. Herrmann,* for respondent.

SWANSON, J.—The State appeals the trial court's order returning property used as trial exhibits to the defendant, Chae Son Pelkey, following the dismissal of charges against Pelkey.

In October 1983, Detective Sergeant James Brauch, a member of the Everett Police Department Vice and Gambling Unit, came into contact with Pelkey, who operated several sauna parlors in Everett and elsewhere. As part of his official duties, Brauch met with Pelkey on October 17, 1983. At that meeting, Pelkey allegedly offered to pay Brauch and another police officer to be kept apprised of vice surveillance. Pelkey gave Brauch some lead crystal glasses at this meeting and agreed to meet Brauch again on October 19, 1983, to give him $2,000 cash which was to be divided with the other officer. At the October 19 meeting, Brauch received $2,000 cash from Pelkey.

Subsequently, Pelkey was charged with bribery and a jury trial was held in March 1985. During the trial, the State amended the charge of bribery to trading in special influence. The jury convicted Pelkey on the amended

charge. Upon subsequent motion by Pelkey, the trial court ordered the judgment arrested and the charges dismissed with prejudice because the trading in special influence statute was unconstitutional. The State appealed and the Washington Supreme Court upheld the dismissal on the basis that it was error to allow the State to amend the information after the State had completed its case in chief. *State v. Pelkey,* 109 Wn.2d 484, 745 P.2d 854 (1987).

Following the mandate from the Washington Supreme Court, the trial court entered an order returning all of the exhibits to the Everett Police Department, including the lead crystal glasses and the $2,000. Subsequently, Pelkey moved for an order requiring the Everett Police Department to return to her the $2,000 and the crystal glasses. At the hearing on the matter, conducted November 4, 1988, Pelkey argued that the property should be returned because it was seized property, the charges had been dismissed, and there is not a specific forfeiture statute governing the disposition of the property. The State and the City of Everett argued that the property did not have to be returned because no seizure had occurred and that the criminal court was not the proper forum for requesting return of the property. The trial court granted Pelkey's motion and ordered the Everett Police Department to return the $2,000 and the glasses to Pelkey. This appeal followed.

## RETURN OF PROPERTY

The only issue on appeal is whether Pelkey is entitled to return of the money and glasses from the Everett Police Department.

Whenever personal property comes into the possession of the police authorities of any city in connection with the performance of their official duties and is held as evidence in a court, the city may dispose of the property in a manner provided for by RCW 63.32.010 if the property remains unclaimed or not taken away after 60 days from the date that the property is released by order of the court. RCW

63.32.010. Here, the property was released to the Everett Police Department by order of the court filed March 10, 1988. Pelkey filed a motion for return of the property on March 25, 1988, thus asserting her claim to the property in a timely fashion. Motions for return of property are governed by CrR 2.3(e), which provides:

> **(e) Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the court for the return of the property on the ground that the property was illegally seized and that the person is lawfully entitled to possession thereof. If the motion is granted the property shall be returned. If a motion for return of property is made or comes on for hearing after an indictment or information is filed in the court in which the motion is pending, it shall be treated as a motion to suppress.

A motion for return of property under CrR 2.3(e) is in the nature of a replevin action. *State v. Card,* 48 Wn. App. 781, 790, 741 P.2d 65 (1987). In *Card,* this court held that CrR 2.3(e) governs the disposition of both lawfully and unlawfully seized property after the property is no longer needed for evidence. *Card,* 48 Wn. App. at 784–86.

Here, the State argues that the property was not "seized" and, therefore, CrR 2.3(e) does not apply. Black's Law Dictionary 1525 (4th ed. 1968) defines seizure as follows: "SEIZURE. To take possession of forcibly, to grasp, to snatch, or to put in possession." Under this definition, we agree with the State that the $2,000 and the crystal glasses were not "seized" by Sergeant Brauch because Pelkey voluntarily gave these items to him. However, we do not agree that lack of a "seizure" prohibits application of CrR 2.3(e). As noted in *Card,* a motion for return of property under CrR 2.3(e) is in the nature of a replevin action and provides for the disposition of property no longer needed for evidence. *Card,* 48 Wn. App. at 784–86, 790. To require a separate replevin action here, as urged by the State, would result in an unnecessary proceeding at a time when the courts are already overburdened. Common sense and judicial economy dictate that CrR 2.3(e) be applied to situations such as the one presented here.

■ Generally, under CrR 2.3(e), the State bears the initial burden of proving, by a preponderance of the evidence, that the claimant has no lawful right to the property because it is fruit of a crime. *Card,* 48 Wn. App. at 790. However, *Card's* rationale for placing the initial burden of proof on the State was based on the fact that the property was "seized", and seizure of property from someone is prima facie evidence of that person's right to the property. *Card,* 48 Wn. App. at 790. Here, however, there was no seizure because the property had been given voluntarily. Therefore, because this motion is in the nature of a replevin action, the initial burden is on the claimant to prove her right to possession. *See Crystal Rec., Inc. v. Seattle Ass'n of Credit Men,* 34 Wn.2d 553, 558, 209 P.2d 358 (1949).

A motion for return of property under CrR 2.3(e) requires an evidentiary hearing. *Card,* 48 Wn. App. at 786. In *Card,* the appellate court held that the hearing conducted below on the motion for return of property was defective. In reaching this conclusion, the court noted that the parties had only submitted memorandums at the hearing and failed to offer any evidence such as affidavits or testimony.

Here, evidence was submitted at the hearing conducted below on the motion for return of property in the form of a declaration by Sergeant Brauch and an affidavit of Pelkey's attorney. In his affidavit, Pelkey's attorney makes a general claim that "title to this property is properly found in [Pelkey]" and "the Everett Police have no cause for retaining [the] property" because the action against Pelkey was dismissed. Sergeant Brauch's declaration states that Pelkey voluntarily gave the property to him. Also presented to the court below was the Supreme Court's decision upholding the dismissal of charges against Pelkey. *See State v. Pelkey,* 109 Wn.2d 484, 745 P.2d 854 (1987). There, it is established that the money and crystal glasses were given to Brauch by Pelkey in consideration for certain favors. *Pelkey,* 109 Wn.2d at 485–86. Based on this evidence, the

court, in granting the motion for return of property, found that Pelkey had given the money and crystal glasses to Sergeant Brauch through mistake and misinformation because she thought he was something other than he represented himself to be.

█ However, the transaction presented here resembles an illegal contract because it grows out of and is connected with an illegal act, *i.e.*, bribery. Although the charges have been dismissed, we must still consider the evidence to determine who is entitled to the property.[1] If a contract is illegal or grows immediately out of and is connected with an illegal contract, Washington courts leave the parties to the contract where they find them. *Golberg v. Sanglier*, 96 Wn.2d 874, 879, 639 P.2d 1347 (1982). Here, the property appears to have been given to Sergeant Brauch as a bribe under RCW 9A.68.010. As a general rule, a contract that is contrary to the terms and policy of an express legislative enactment is illegal and unenforceable. *State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 26, 182 P.2d 643 (1947). The agreement between Pelkey and Sergeant Brauch appears contrary to RCW 9A.68.010. Accordingly, we reverse the trial court's order awarding possession of the $2,000 and crystal glasses to Pelkey. Instead, the parties will be left as we found them, with the City of Everett in possession of the property.

WEBSTER and WINSOR, JJ., concur.

---

[1]Dismissal of the conviction of the "trading in special influence" charge was upheld by the Supreme Court in *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987), on the basis of the State's improper amendment of its information by charging a different crime after presentation of its case in chief.